**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| BROOKS INSTRUMENT, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6:10-cv-221-LED |
| | ) | |
| v. | ) | |
| | ) | |
| MKS INSTRUMENTS, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY IN SUPPORT OF
MKS INSTRUMENTS, INC.'S  MOTION TO TRANSFER VENUE**

Despite Brooks' attempts in its Opposition To Defendant's Motion To Transfer Venue (Dkt. 18) ("Opposition") to distinguish the technologies at issue in this action and the Massachusetts Action[1] Brooks cannot deny that the claims it asserts in both actions require pressure sensors delivering pressure signals measuring pressure in a fluid or gas environment. Indeed, Brooks does not even deny that these similarities have resulted in at least MKS's πMFC line of products being accused of infringement in both actions. The clear overlap in technology and accused products alone makes Massachusetts the clearly more convenient forum.

Moreover, Brooks' Opposition places substantial weight on its facility and activities in Allen, Texas. These arguments are suspect in light of Brooks own press release— discussed in foonote 11 of MKS's Motion To Transfer Venue (Dkt. 10)("Motion")— indicating that at least the manufacture of Brooks pressure products is moving from Allen, Texas to Brooks' headquarters in Hatfield, Pennsylvania. Brooks has failed to address this press release.

## I.   THE PRIVATE INTEREST FACTORS

### A. Judicial Economy Makes Massachusetts The Clearly More Convenient Forum.

Brooks Opposition strains to avoid admitting that the products it accuses of infringement in the Massachusetts Action are also accused of infringement in this action. MKS's Motion stated that MKS's πMFC line of pressure insensitive products at issue in the Massachusetts Action use the very pressure sensors accused of infringement in this action.[2] Motion, pp. 4, 8. Brooks Opposition fails to dispute this contention. Instead, Brooks seeks to leverage the vagueness of its infringement contentions in this action to argue that because MKS cannot determine exactly which of its products are accused, it should not be heard to draw similarities

---

[1] Civil Action Number 6:10-cv-10720 pending in the United Stated District Court for the District of Massachusetts.
[2] Indeed, every one of MKS's πMFC products accused in the Massachusetts Action includes a pressure sensor of the sort accused of infringement in this action.

between the accused products. Brooks' argument rings hollow in light of this extensive overlap of accused products. This overlap alone makes Massachusetts the clearly more relevant forum.

Brooks' attempts to distinguish the technologies in the two actions ignores not only this overlap of accused products, but also similarities in the claims of the asserted patents. For example, the claims of the patents asserted in this action require a sensor producing a sensor signal[3], which, in the context of the accused pressure measurement and control products, is a pressure signal. The claims of Brooks patents asserted in the Massachusetts Action also require a pressure sensor to produce a pressure signal.[4] The pressure sensors in both these actions generate pressure signals indicating the pressure in a fluid or gas environment. The fundamentals of gas properties and fluid dynamics therefore drive the design of these pressure sensors as well as the mass flow controllers in the Massachusetts Action.

Brooks' draws an overly narrow focus on the "digital circuitry and electrical engineering" of the patents and pressure measurement and control products in this action. Opposition, pp. 3. The products at issue in both actions relate to the same fundamental technology of measuring or controlling pressure and/or flow of fluids and gasses (i.e. fluid dynamics). This overlap is evinced by Brooks' own failure to deny that MKS's πMFC line of pressure insensitive products are at issue in both actions.

Unable to draw legitimate technical distinctions between the technologies in the two actions, Brooks argues that MKS's website organizes the products accused of infringement in the two actions into different classes of products. Opposition, p. 9. How MKS has chosen to

---

[3] '381 patent, col. 11, line 51; '983 patent, col. 11, line 53, col. 12, line 58, col. 13, line 15; '518 patent, col. 11, line 48.
[4] '392 patent, col. 50, lines 21-24, col. 51, lines 35-38, col. 52, lines 32-35, col. 53, col. 53, lines 18-21; '477 patent, col. 49, lines 42-44, col. 50, lines 57-61.

organize its product offerings for business reasons has no impact on whether there is a technical overlap sufficient to create judicial efficiencies by placing these actions before the same court.

Brooks' attempt to distinguish *Fujitsu* is based entirely on its failed attempt to distinguish the technologies in these actions. There is a significant overlap in technology and *Fujitsu* is on point.

The existence of some products and the same fundamental technology being put at issue on both actions renders the District of Massachusetts the clearly more convenient forum. The opinions cited by Brooks are inapposite.[5]

### B. Relative Ease of Access to Sources of Proof

Brooks correctly recognizes that the bulk of relevant evidence will come from the accused infringer, which, in both actions, is MKS. Opposition, p. 9. Brooks then seeks to leverage the vagueness of its infringement contentions in this action to argue that because MKS cannot determine exactly which of its products are accused, it cannot know where its relevant documents lie. MKS suspects—but cannot know with certainty—that MKS's digital pressure sensors and products including them will be accused in this action. Nearly all documents and witnesses related to these products are located in Massachusetts. Motion, pp. 5-6. The MKS

---

[5] In *Invitrogen Corp. v. General Elec. Co.* this Court found that there were few similarities between the patents at issue in the two cases. 2009 WL 331889, *4 (E.D. Tex. Feb. 9, 2009). Here, all claims including pressure measurement and, more fundamentally, fluid dynamics such that some of the same products are accused in both cases. In *J2 Global Commc'ns, Inc. v. Protus IP Solutions, Inc.* the defendants were different and, thus, there was no overlap of accused products as exists here. 2008 U.S. Dist. Lexis 103609, *20-21 (E.D. Tex. Dec. 23, 2008). In *Connectel, LLC v. Cisco Systems, Inc.*, there was no ongoing case in the transferee forum, which had merely construed two claim terms of the patent at issue. 2005 U.S. Dist. Lexis 2252 (E. D. Tex. Feb. 16, 2005). Here, there is the opportunity to consolidate two ongoing actions that will provide efficiencies all the way through trial. In *Cummins-Allison Corp. v. Glory Ltd.*, a mirror declaratory judgment action had already been assigned to a different Judge in the transferee forum than the Judge having prior experience with the related patents such that the efficiencies sought by the proposed transfer would not have materialized. 2004 U.S. Dist. Lexis 13839, *19-20. Finally, the Federal Circuit opinion in *In Re Zimmer Holdings, Inc.* transferred an action away from other related actions to a forum "where most of the identified witnesses reside and where the other convenience factors clearly" favored transfer largely because the ties to the transferring forum were "recent, ephemeral, and an artifact of litigation." 2010 U.S. App. Lexis 12939, *7, *10.

sales office in Austin, Texas is not in this district and contains only a portion of MKS' sales data. A complete set of relevant sales data would be accessed in Andover, Massachusetts. Motion, p. 5. The MKS facilities in Richardson, Texas and Nogales, Mexico may contain some relevant documents showing the configuration and/or operation of accused products, but these are just a portion of a complete set of relevant documents which resides in Massachusetts. Motion, p. 5.

Brooks contradicts its own admission that MKS will have the bulk of relevant evidence when it chastises MKS for failing to take Brooks' documents into account. While MKS was, and remains, unaware of the volume of Brooks documents in Texas, it doubts that the documents supporting development of the invention on which Brooks relies outweigh the volume of MKS' documents in Massachusetts regarding the accused products, their development, configuration, operation, and sales.

Moreover, Brooks fails to address its own press release indicating that at least the manfacture of Brooks pressure products is moving from Allen, Texas to Brooks' headquarters in Hatfield, Pennsylvania. Motion, p. 6, footnote 11. Few, if any, of Brooks' contacts may remain in this District for long.

### C. Availability of The Compulsory Process

Regardless of whether Brooks' primary interest is how MKS' accused products operate, MKS may present important testimony from its inventors about how its accused products were designed and operate. Opposition, p. 11. Thus, Messrs. Shajii and Ambrosina are relevant to MKS' defense. Moreover, Brooks' reliance on non-Brooks' witnesses in Texas is wholly undermined by its own contention that the lack of compulsory process can be remedied by videotaped deposition testimony. Opposition, p. 11.

### D. Cost of Attendance for Willing Witnesses

Brooks acknowledges that the bulk of evidence lies with MKS (Opposition, p. 9) and that Brooks is primarily interested in "the operation of MKS's products" (Opposition, p. 11). Accordingly, the bulk of evidence in this case, including witnesses, lies in MKS's Massachusetts facilities, not its sales or service facilities in Texas, its manufacturing facility in Nogales, Mexico or Brooks' facilities in Texas or California.

## II. THE PUBLIC INTEREST FACTORS

### A. Aministrative Difficulties Flowing From Court Congestion

MKS disagrees with Brooks' bald contentions that a transfer would slow the Massachusetts action or that Brooks is suffering irreparable harm. Opposition, p. 14. These contentions should be given weight commensurate with the support provided by Brooks - none.

### B. Local Interests

Brooks relies on the location of the development of the patented invention. These are of little or no relevance to an action accusing MKS's products of infringement. Brooks also relies on its Allen, Texas facility which appears to be moving to Hatfield, Pennsylvania.

The accused products were designed in Massachusetts, all engineering functions regarding those products are in Massachusetts and nearly all of the accused products are manufactured in Massachusetts. Motion, pp. 4-5. The MKS sales office in Austin, Texas, on which Brooks relies, is not in this District. On balance, Massachusetts has the greater local interest in this action.

| | |
|---|---|
| Date: <u>August 12, 2010</u> | By: <u>/s/ J. Thad Heartfield</u><br>J. Thad Heartfield, Attorney In charge<br>Texas Bar No. 09346800<br>M. Dru Montgomery<br>Texas Bar No. 24010800<br>The Heartfield Law firm<br>2195 Dowlen Road<br>Beaumont, Texas 77706<br>Phone: 409.866.3318<br>Fax:    409.866.5789<br>E-mail: thad@jth-law.com<br>E-mail: dru@jth-law.com<br><br>Sarah Chapin Columbia (*pro hac vice*)<br>Matthew E. Leno (*pro hac vice*)<br>Leigh J. Martinson (*pro hac vice*)<br>McDermott Will & Emery LLP<br>28 State Street<br>Boston, Massachusetts 02109<br>Phone: 617.535.4000<br>Fax:    617.535.3800<br>E-mail: scolumbia@mwe.com<br>E-mail: mleno@mwe.com<br>E-mail: lmartinson@mwe.com<br><br>**Attorneys for MKS Instruments, Inc.** |

## CERTIFICATE OF SERVICE

The undersigned certifies that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 12th day of August, 2010. Any other counsel of record will be served by first class mail.

<u>  /s/ J. Thad Heartfield              </u>
J. Thad Heartfield